IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Lottie Young, ) | Civil Action No. 2:14-cv-1897-TMC-MGB |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, ) | **OF MAGISTRATE JUDGE** |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, Lottie Young, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

Plaintiff was 35 years old on her alleged disability onset date of February 4, 2011. (R. at 22, 140.) Plaintiff claims disability due to, *inter alia*, carpal tunnel syndrome, tendonitis in the left hand, high blood pressure, depression, and heart murmurs. (See R. at 126; see also R. at 24-25.) Plaintiff testified that she finished high school, and she has past relevant work as a machine operator. (R. at 77, 28.)

Plaintiff filed an application for DIB on March 4, 2011. (R. at 22.) After her application was denied initially and on reconsideration, a hearing was held before an Administrative Law Judge (ALJ) on January 7, 2013. (R. at 22.) In a decision dated January 24, 2013, the ALJ found that Plaintiff was not disabled. (R. at 22-30.) The Appeals Council denied Plaintiff's request for review,

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

(R. at 2-5), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> (2) The claimant has not engaged in substantial gainful activity since February 4, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> (3) The claimant has the following severe impairment: carpal tunnel syndrome (20 CFR 404.1520(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5) After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform a reduced range of medium work as defined in 20 CFR 404.1567(c). Specifically, the claimant is able to lift and carry up to 50 pounds occasionally and 25 pounds frequently and stand, walk, and sit for up to 6 hours each in an 8-hour day with normal breaks. She is able to frequently use her upper extremities for pushing and pulling, and may frequently reach overhead bilaterally. She may occasionally climb ladders and perform other postural activities frequently. The claimant may perform fine manipulation frequently up to 2/3 of the day. She should avoid concentrated exposure to hazards. The claimant is further limited to unskilled work requiring no more than frequent interaction with the general public.
>
> (6) The claimant is capable of performing past relevant work as a machine operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> (7) The claimant has not been under a disability, as defined in the Social Security Act, from February 4, 2011, through the date of this decision (20 CFR 404.1520(f)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. See 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. See 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. See 20 C.F.R. § 404.1520(a)(4); see also Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. See SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). She must make a prima facie showing of disability by showing that she is unable to return to his past relevant work. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. See Grant, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which

the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. See id. at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Richardson v. Perales, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that the Commissioner's conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The Plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, Plaintiff asserts the ALJ erred by improperly rejecting the opinions of Dr. Alam, her treating physician, and Dr. Cole, an examining psychologist. (Dkt. No. 11 at 17-28.) Plaintiff also asserts error in the ALJ's conclusion that her mental impairments were not severe and contends the ALJ did not include her mental impairments in assessing her residual functional capacity. (Id. at 28-32.)

4

### A. ALJ's Rejection of the Opinions of Dr. Alam and Dr. Cole

#### 1. Dr. Alam

Plaintiff asserts the ALJ erred in rejecting the opinions of her treating physician, Dr. Alam. Plaintiff submitted several documents signed by Dr. Alam. In a document dated October 10, 2011, Dr. Alam indicated that Plaintiff was not "capable of working a full-time job requiring lifting of 10 pounds, standing and walking two hours in an eight-hour workday and sitting six hours in an eight-hour workday." (R. at 263.) He indicated that Plaintiff would be expected to stay home "at least 4-5 days" per month due to "exacerbation of her pain and depression." (R. at 263.) When asked to describe the reasons for Plaintiff's limitations, Dr. Alam noted Plaintiff's bilateral carpal tunnel syndrome, "markedly severe" on the right and "moderate" on the left; de Quervain's tenosynovitis of the left trigger fingers on the right middle finger and ring finger; and major depressive disorder with mood disorder. (R. at 263, 264.)

On a document dated December 15, 2011, Dr. Alam noted Plaintiff's diagnosis of depression and that Plaintiff exhibited an "obvious" work-related limitation in function as a result of her mental condition. (R. at 332.) He listed Plaintiff's thought process as slowed and distractible; thought content as appropriate; mood as flat and depressed; attention and concentration as poor; and memory as adequate. (R. at 332.)

In a document dated January 3, 2012, Dr. Alam essentially reiterated his opinion dated October 10, 2011. (See R. at 445; see also R. at 263.) When asked to describe the reasons for Plaintiff's limitations, he lists Plaintiff's carpal tunnel syndrome and indicates the inability to operate due to "severe keloid formation." (R. at 445.) He also lists Plaintiff's major depressive disorder with mood disorder and indicates he has referred Plaintiff to mental health. (R. at 445.) In a letter dated February 14, 2012, Dr. Alam stated (verbatim),

> Ms. Young is a patient at our office since past 2 years. Has been following up for a medical condition. She has bilateral CTS right moderately severe; left moderate with left hand de Quervain's tenosynovitis, trigger finger right middle and ring finger. She also has major depressive disorder with mood disorder. Other conditions include HTN, hyperlipidemia, insulin resistance, ANA positive, tobacco dependence. Due to

5

>   above medical conditions, she is unable to do any meaningful employment and has significant debility to carry on any work at present.

(R. at 408.)

The ALJ gave "[l]ittle weight" to Dr. Alam's opinions; the ALJ stated,

>   Little weight has been given to the claimant's primary care physician that the claimant is unable to perform work activity due to limitations from carpal tunnel syndrome and depressive disorder. (Exhibits 5F, 8F, 13F). Objective findings do not support the claimant is incapable of all work activity. Specifically in December 2011, her carpal tunnel symptoms were reported to be stable, and records through September 2012 do not show an increase in symptoms. (Exhibits 13F, 14F).

(R. at 28.)

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545; see also 20 C.F.R. § 404.1527. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). Even so, "the rule does not require that the [treating physician's opinions] be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam ) (citing Campbell v. Bowen, 800 F.2d 1247, 1250 (4th Cir. 1986)).[2] The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 1996 WL 374188, at *5; see also 20 CFR § 404.1527(c)(2).

---

[2] But see 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").

While the ALJ's analysis could have contained a more detailed explanation, the undersigned concludes the ALJ's rejection of Dr. Alam's opinions is not reversible error. Dr. Alam opined, *inter alia*, that Plaintiff "is unable to do any meaningful employment." (R. at 408.) Of course, such an opinion is not entitled to any special significance, as that issue is reserved to the Commissioner. See 20 C.F.R. § 404.1527(d). The ALJ gave "[l]ittle weight" to Dr. Alam's opinion because "[o]bjective findings do not support he claimant is incapable of all work activity." (R. at 28.) This conclusion is supported by substantial evidence. Exhibit 13F, which is cited by the ALJ, indicates Plaintiff's depression is "partially treated" with medication, and as of her office visit of July 18, 2012, Plaintiff's mood was "doing better." (R. at 364, 366.)[3] And, as detailed below, the ALJ's conclusion that Plaintiff's depression was not severe is supported by substantial evidence. Plaintiff makes much of the ALJ noting, in rejecting Dr. Alam's opinions, that Plaintiff's carpal tunnel symptoms were stable. While stability alone does not mean Plaintiff's condition was not disabling, see Hemminger v. Astrue, 590 F. Supp. 2d 1073, 1081 (W.D. Wis. 2008), the September 2012 records to which the ALJ refers indicates that Plaintiff's symptoms were no more than moderate. (See R. at 28; see also R. at 438, 441.) In addition, the ALJ's rejection of Dr. Alam's opinions is consistent with the opinions of the state agency consultants, to which the ALJ gave "great weight." (R. at 28; see also R. at 351-58.) On this record, the undersigned concludes the ALJ's rejection of Dr. Alam's opinions is supported by substantial evidence. See, e.g., Thompson v. Astrue, 442 F. App'x 804, 808 (4th Cir. 2011) (no reversible error in ALJ's decision to afford less weight to treating physician where, *inter alia*, the treating physician "listed [the plaintiff's] diagnoses, but failed to explain how her conditions impacted her abilities," instead "opin[ing] in his conclusory fashion that [the plaintiff] was 'permanently and totally disabled' and 'will never be able to perform substantial gainful work activity.'").

---

[3]The ALJ also noted, although not specifically in reference to Dr. Alam's opinions, that Plaintiff testified that she did not like being around people but had felt this way most of her life. (See R. at 26-27; see also R. at 92-95, 97.)

### 2. Dr. Cole

Plaintiff contends the ALJ's rejection of Dr. Cole's opinions was erroneous. (See Dkt. No. 11 at 24-28 of 32.) Dr. Cole noted, *inter alia*, that Plaintiff was "somewhat reserved" but was also "pleasant, friendly, [and] cooperative." (R. at 333.) He indicated that Plaintiff "has a good sense of humor and engages in small talk," and she "has satisfactory social and communication skills." (R. at 333.) He noted Plaintiff's mood was "sad" and affect was "mildly constricted." (R. at 333.) He stated that she "does not attempt to promote or exaggerate symptoms." (R. at 333.) Dr. Cole noted that Plaintiff was taking Pristiq, which was prescribed by her primary care physician, and that she had never received treatment from a mental health professional. (R. at 334.) Dr. Cole detailed Plaintiff's daily activities, wherein he stated that she takes care of her own hygiene and occasionally cleans, cooks, and does laundry. (R. at 334.) His report states, "She indicates she did her job well, but was easily annoyed by others." (R. at 334.) She shops for herself and visits with family members but has a limited number of friends. (R. at 334.) The "work limitations" section of Dr. Cole's report provides as follows:

> She has the ability to learn both simple and complex tasks. She is able to concentrate enough to complete a task in a timely manner. She has moderate difficulty getting along with people and would need the employment where she did not have to work directly with the public on a full-time basis. She has had moderate problems relating to others for years. She is capable of handling her own funds.

(R. at 335.) The ALJ stated that he gave "little weight" to Dr. Cole's opinion:

> The undersigned has . . . given little weight to the opinion of consultative examiner Spurgeon N. Cole, Ph.D. that claimant has moderate difficulty getting along with people and should not work directly with the public. Dr. Cole only examined the claimant once, thus the undersigned finds that his opinion likely relies on the claimant's subjective complaints more than objective findings. (Exhibit 9F). There is no evidence that the claimant received mental health treatment other than being prescribed medications by her primary care physician. The claimant reported a long history of anxiety and there is no objective evidence that it affected her work performance in the past.

(R. at 28.)

As noted above, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources. 20 C.F.R. § 404.1545; see also 20 C.F.R. § 404.1527. The regulations provide that the Commissioner is obligated to weigh Dr. Cole's opinion in light of a broad range of factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the source is a specialist. 20 C.F.R. § 404.1527(c)(1)-(5); see also 20 C.F.R. § 404.1513(a)(2). Although Plaintiff takes issue with the ALJ noting that Dr. Cole only examined the Plaintiff once, that factor certainly falls within the factors listed in the regulations. See 20 C.F.R. § 404.1527(c). As detailed below, the ALJ did not err in concluding Plaintiff's mental impairment was not severe.

In spite of all the allegations of error in rejecting Dr. Cole's opinions, the undersigned notes that the errors–if any–were harmless. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (finding the ALJ's error harmless when the ALJ would have reached the same result notwithstanding an error in his analysis). The ALJ stated that he gave "little weight" to Dr. Cole's opinion, but the ALJ did limit Plaintiff's RFC to "unskilled work requiring no more than frequent interaction with the general public." (R. at 25, 28.) Such a limitation was–as the ALJ noted–in line with Plaintiff's testimony that "being around people" has been "aggravat[ing]" her for a long period of time. (R. at 93, 28.) Indeed, the "work limitation" section of Dr. Cole's report indicates that Plaintiff "has had moderate problems relating to others for years." (R. at 335.) Plaintiff reported to Dr. Cole that she "has never gotten along well with coworkers." (R. at 334.) At the hearing, the following exchange occurred during Plaintiff's testimony:

> Q. Tell me, what is it you feel like prevents you from working because you worked on up until we have to figure out when, whether it was this year or last year or what. Why did you stop working and why can't you work? You've been working all this time. What's changed?
>
> A. Because of my hands limit me to do stuff and being around people just aggravates me. It–I mean–
>
> Q. I mean you've been around your whole life, what–why is it different now?

> A. It's not I've been having this problem for a while. . . .
>
> . . .
>
> Q. But you've been around people–you said this has been going on your whole life. And you've been working. I don't know, can't find that as an excuse or a change.
>
> A. I mean, at the time, I mean, I had to work because I didn't have anybody to help. . . .

(R. at 93-94.)

It appears the conclusion that Plaintiff contends the ALJ erred in not adopting was Dr. Cole's conclusion that Plaintiff should not work directly with the public on a full-time basis. (See R. at 28.) Of course, the ALJ's RFC does not indicate Plaintiff can work with the public full-time; the RFC limits Plaintiff to "unskilled work requiring no more than frequent interaction with the general public." (R. at 25.) The term "frequent" "means occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *6. Given this limitation, the undersigned finds no reversible error in the ALJ's analysis of Dr. Cole's opinions.

### B.     ALJ's Conclusion that Plaintiff's Depression Is Not Severe

As noted above, Plaintiff contends the ALJ erred in concluding that her mental impairments were not severe and in failing to take her mental impairments into account when formulating her residual functional capacity. (See Dkt. No. 11 at 28-32.) The regulations define a "non-severe" impairment as "[a]n impairment or combination of impairments . . . [that] does not significantly limit . . . physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs," and some examples include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;

> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). In Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984), the Fourth Circuit stated, "An impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans, 734 F.2d at 1014 (emphasis in original) (citations omitted).

Plaintiff asserts the ALJ's conclusion that her mental impairments were not severe is erroneous because "the record shows objective findings that [Plaintiff's] mental impairments caused fairly significant problems" for Plaintiff. (Dkt. No. 11 at 28 of 32.) In her Brief, Plaintiff cites many of Dr. Alam's notes as well as some notations from Dr. Cole's report. (See Dkt. No. 11 at 28-29 of 32.) But the ALJ's analysis on this point was thorough and supported by substantial evidence. The ALJ stated, *inter alia*,

> The claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere.
>
> In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is activities of daily living. In this area, the claimant has mild limitation. The claimant reported taking care of her own personal hygiene, occasionally cleaning, doing laundry, cooking, and grocery shopping. (Exhibit 9F).
>
> The next functional area is social functioning. In this area, the claimant has mild limitation. The claimant reported past difficulty getting along with coworkers but reported that despite this she was able to perform her job well. She reported that she occasionally attends church and speaks to church members, visits with family members, goes places alone, and has some friends. (Exhibit 9F).
>
> The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. The claimant reported having both satisfactory memory

>   and concentration. She also reported being able to follow instructions and pay bills and count change. (Exhibit 9F).
>
>   The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration.
>
>   Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere (20 CFR 404.1520a(d)(1)).

(R. at 24-25.)

While Plaintiff believes there is evidence in the record to support her contention that the impairment is severe,[4] there is also evidence in the record to support the ALJ's conclusion that the impairment is not severe. The exhibit cited by the ALJ, Exhibit 9F, is the report by Spurgeon N. Cole, Ph.D. (See R. at 333-35.) As the ALJ noted, Dr. Cole indicated Plaintiff takes care of her own hygiene and occasionally cooks, does laundry, and cleans. (R. at 334; see also R. at 24.) Dr. Cole also stated that Plaintiff was capable of handling her own funds and shops for herself. (R. at 334-35.) Dr. Cole's opinion also supports the ALJ's conclusion that Plaintiff has mild limitations with social functioning. (See R. at 334-35; see also R. at 25.) The ALJ noted that Plaintiff reported difficulty getting along with others but also reported she was able to do her job well in spite of that difficulty. (See R. at 25, R. at 334-35.) The ALJ also noted Plaintiff's report of visiting with family members and a limited number of friends as well as her report that she occasionally attended church. (R. at 334, 25.) Dr. Cole's opinion supports the ALJ's conclusion that Plaintiff has mild difficulty with concentration, persistence, or pace; Dr. Cole stated that "[m]emory and concentration are both satisfactory" and that Plaintiff "is able to concentrate well enough to complete a task in a timely manner." (R. at 334-35, 25.)

---

[4]Of course, the mere fact that Plaintiff has been diagnosed with depression does not mean that her depression is a severe impairment. See, e.g., Gilstrap v. Astrue, Civ. A. No. 3:08-cv-1990-GRA, 2009 WL 3066364, at *8 (D.S.C. Sept. 22, 2009) ("Although Plaintiff was diagnosed with depression, she has not met her burden to show that this impairment is severe.").

As noted above, substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance." Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996); see also Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." (internal quotation marks and citations omitted)). While Plaintiff disagrees with the ALJ's conclusion, there is certainly evidence in the record to support it. Moreover, even though the ALJ concluded that Plaintiff's depression was not severe, he did consider it in formulating her residual functional capacity. The ALJ limited Plaintiff to "unskilled work requiring no more than frequent interaction with the general public." (R. at 25.) Accordingly, Plaintiff's argument is without merit. See Bryant v. Colvin, 571 F. App'x 186, 188 (4th Cir. 2014) (rejecting the plaintiff's argument that the ALJ erred in not considering "major depressive disorder" as a severe impairment where, *inter alia*, "the record reveals that although the ALJ did not specifically find that [the plaintiff] suffered from 'major depressive disorder,' the ALJ discussed Bryant's history of depression under steps two and three and when determining her RFC").

Plaintiff also asserts that even if the court concludes the ALJ "properly determined that Young's mental impairments were not severe, the ALJ failed to consider the combined effect of all of Young's impairments." (Dkt. No. 11 at 30 of 32.) The regulations provide, *inter alia*,

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. . . .

20 C.F.R. § 404.1523; see also Walker v. Bowen, 889 F.2d 47, 49-50 (4th Cir. 1989) ("It is axiomatic that disability may result from a number of impairments which, taken separately, might not be

disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity.").

The undersigned finds no reversible error here. Plaintiff's assertion of error here is essentially a restatement of her severe impairment argument. See Sawyer v. Colvin, 995 F. Supp. 2d 496, 509-10 (D.S.C. 2014.) In any event, the ALJ found only one severe impairment: carpal tunnel syndrome. Based on this severe impairment, the ALJ limited Plaintiff to a reduced range of medium work, such as limiting Plaintiff's fine manipulation. (See R. at 25.) Furthermore, even though the ALJ concluded Plaintiff's mental impairment was not severe, the ALJ did limit Plaintiff's RFC based on Plaintiff's mental impairment: the ALJ limited Plaintiff to "unskilled work requiring no more than frequent interaction with the general public." (R. at 25.) In his explanation of Plaintiff's RFC, the ALJ noted, *inter alia*,

> Regarding anxiety, the claimant reported she talked to her doctor about what was going on and he put her on a medication for anxiety. She said she does not like being around other people but stated she has felt this way most of her life. She denied other psychological problems. . . .

(R. at 26-27.) It is clear the ALJ took into account the Plaintiff's combination of impairments. See Brown v. Astrue, No. 10-1584, 2012 WL 3716792, *6 (D.S.C. Aug. 28, 2012) ("[T]he adequacy requirement of Walker is met if it is clear from the decision as a whole that the Commissioner considered the combined effect of a claimant's impairments."). The Commissioner's decision should be affirmed.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 10, 2015
Charleston, South Carolina

14